**CAROL ANN MOSES #164193**
Attorney at Law
7636 North Ingram, Suite #104
Fresno, CA 93711
Telephone: (559) 449-9069
Facsimile: (559) 513-8530
Email: carol@yosemitelawyer.com

Attorney for Defendant
PAUL STEVEN KUBE

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:19-cr-000257-NONE-SKO |
| Plaintiff, | SUPPLEMENTAL BRIEFING TO DEFENDANT'S MOTION TO |
| vs | SUPPRESS CELL PHONE PHOTOS |
| PAUL STEVEN KUBE, | HEARING DATE: JUNE 10, 2020 |
| Defendant. | TIME: 1:30 PM |
| | HONORABLE DALE A. DROZD |

Paul Steven Kube, by and through his attorney Carol Moses, files this supplemental briefing to his Motion to Suppress Cell Phone Photos obtained without a warrant, filed on March 23, 2020. A brief hearing was held June 5, 2020, at which time the Court granted Mr. Kube's request for an evidentiary hearing, to be held June 10, 2020 at 1:30 PM.

BACKGROUND

On November 21, 2019 an Indictment was filed against Paul S. Kube, alleging Count 1: 18 U.S.C.§ 2261(a)(1) Interstate Domestic Violence; Court 2: 18 U.S.C.§113(a)(4) Assault by Striking, Beating or Wounding; Count 3: 18 U.S.C §113(a)(5) Simple Assault and Count 4: 36 C.F.R. §2.34(a)(3) Disorderly Conduct, over conduct which is claimed to have occurred in

Yosemite National Park on September 5, 2019. At all times Mr. Kube has denied the allegations, and claimed his innocence.

Mr. Kube was arrested on September 5, 2019 and released from custody on September 9, 2019 with a variety of conditions of release imposed, including location monitoring, curfew, alcohol counseling, treatment and testing, a stay-away order from his wife and a twenty-five thousand dollar cash bond. Conditions of release have been modified to reflect the passage of time, successful completion of a substantive alcohol treatment and counseling program and 100% compliance on all other conditions of release, however the stay-away order remains in place.

When Mr. Kube was arrested and taken to the Yosemite Holding Facility in Yosemite Valley, Mrs. Kube stayed at the their campsite in the Crane Flat Campground. It was close to midnight and she got in her tent to sleep for the night. She used her cell phone as a mirror and in doing so took photos of her face.

The evening of the arrest Mrs. Kube repeatedly refused, under increasing pressure, to allow the NPS rangers to photograph her face. She was confronted by Ranger Justin Fey the next morning who wanted to interview her and who also again asked her if he could photograph her face. She again declined.

At some point Mrs. Kube told Ranger Fey she had photos of her face on her phone when she used her phone as a mirror. Ranger Fey wanted those photos stored on the phone Mrs. Kube had in her possession.

Ranger Fey ultimately seized the phone from Mrs. Kube without a warrant, and without Mrs. Kube's consent. It is those photographs on that phone which are the subject of Mr. Kube's Motion to Suppress and this Supplemental Briefing.

At the hearing on June 5, 2020, the Court was skeptical about one's spouse's reasonable expectation of privacy in a mobile phone used by the other spouse. The Court also appeared skeptical regarding a reasonable expectation of privacy in items or data held by a third party. Mr. Kube has a reasonable expectation of privacy in that mobile device because he used that phone to store private marital communications, and other sensitive and private documents. Additionally,

Mr. Kube owned that particular phone jointly with his wife, used it mutually and had authority to exclude others from its access.

## MR. KUBE HAS STANDING TO CHALLENGE THE PROPRIETY OF THE SEARCH OF THE MOBILE CELL PHONE HE AND HIS WIFE SHARE

The Fourth Amendment established "the right of the people to be secure in their persons, houses, papers and effects." Mr. Kube stored some of his papers and effects in the telephone he shared with his wife. Mr. Kube entrusted those papers and effects to his wife by storing them on a telephone which she used.[1] Mr. Kube did not sacrifice any expectation of privacy by storing those materials which were of a private, confidential, personal and sensitive nature on a jointly owned and mutually used mobile device.

The marital relationship is highly valued in the law and marital communications are privileged. Even when confidential information is held by or voluntarily disclosed to third-parties, it may still be protected by the Fourth Amendment. For instances, mail held by a letter carrier is protected by the Fourth Amendment as are emails held by an Internet Service provider. *Ex parte Jackson*, 96 U.S. 727 (1878) and *United States v Warshak*, 631 F.3d 266, 283-288 (6th Cir. 2010).

Mr. Kube has a possessory interest in the cell phone he and his wife share. Mr. Kube's fingerprint unlocks the phone and a private password that also unlocks the device. Mr. Kube has the authority and the ability to exclude others, with the exception of his wife, from accessing the mobile cell phone they mutually use. The two phones owned by The Kubes are shared. Mrs. Kube frequently uses the phone that Mr. Kube prefers to take photographs since it has a better camera.

The United States Supreme Court held in *Rakas v. Illinois*, 439 U.S. 128, 149, 99 S.Ct. 421, 433(1978), that the proper test to be applied in determining whether a defendant is a "person aggrieved by an unlawful search and seizure" Fed.R.Crim.P., Rule 41(e) is whether that person has suffered an invasion of a legitimate expectation of privacy." "A reasonable expectation of privacy may be shown either by reference to concepts of real or personal property law or to

---

[1] Counsel believes the Court is aware that the defense contends Mr. Kube also regularly used the phone.

understandings that are recognized and permitted by society." *United States v Thomas*, 447 F.3d 1191, 1197-99 (2006). A "possessory or ownership interest" need not be defined narrowly: A reasonable expectation of privacy may be shown "either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v Carter*, 525 U.S. 83, 88, 119 S.Ct. 469 (1998) (quoting *Rakas,* 439 U.S. at 142 n.12, 99 S.Ct 421).

Therefore, a defendant who lacks an ownership interest may still have standing to challenge a search, upon a showing of "joint control" or "common authority" over the property searched. *Compare Portillo,* 633 F.2d at 1317 (defendant has standing to challenge a search of a friend's car because he was in possession of the car with the permission of the owner) and *United States v. Johns*, 851 F.2d 1131, 1136 (9th Cir. 1988) (defendants have standing to challenge search of a storage unit over which they had joint control and supervision), with *United States v Lockett,* 919 F.2d. 585, 588 (9th Cir. 1990) (defendant who did not reside at or show a proprietary interest in a residence, and who could not show joint control or supervision of the property, lacks standing to challenge a search).

## MR. KUBE HAS AN OWNERSHIP INTEREST IN THE PHONE HE SHARES WITH HIS WIFE

In this particular case, Mr. Kube holds an ownership interest in the phone, and has the authority to use the phone jointly with Mrs. Kube and to exclude others from use or viewing its contents. Even if Mr. Kube did not have an ownership interest in the phone, he does have common authority which rests "on mutual use of the property by persons generally having joint access or control for most purposes." *Illinois v Rodriguez*, 497 U.S. 177, 181, 110 S.Ct 2793. For example, in *Jones v United States*, 362 U.S. 257, 259, 265, 80 S.Ct. 725, the defendant had standing to challenge the search of a friend's apartment when he had permission to use the apartment, had a key to the apartment, stored his belongings there, and had the right and ability to exclude others, except the owner, from the apartment. *See also*, *Rakas*, 439 U.S. at 148-49, 99

S.Ct 421 (contrasting *Jones* with a defendant who "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized"). Similarly, in *United States v Portillo*, 633 F.2d 1313 (9th Cir. 1980), the Court held that a defendant had a legitimate expectation of privacy in his friend's car, though the defendant lacked any cognizable property interest in the car, 633 F.2d at 1317. The Court noted that a defendant may have a legitimate expectation of privacy in another's car if the defendant is in possession of the car, has the permission of the owner, holds a key to the car, and has the right and ability to exclude others, except the owner, from the car. *See id*. Mr. Kube holds the same interest as in *Portillo* and claims his right to challenge the propriety of the search of the cell phone in his wife's possession because he has a reasonable expectation of privacy to the documents and things he stores on that particular phone over which he has an ownership interest, joint control and common authority.

MR. KUBE HAS A REASONABLE EXPECTATION OF PRIVACY
IN THE MOBILE CELL PHONE HE AND HIS WIFE SHARE
WHICH HE DID NOT RELINQUISH

In 2018, the Supreme Court decided *Carpenter v United States*, and found that the government needed a search warrant to obtain cell site location information even though those records were created and maintained by a third-party. *Carpenter v United States*, 138 S.Ct. 2206, 2219-20 (2018). The fact that the records are in the possession of a third-party did not eliminate defendant Carpenter's reasonable expectation of privacy. The idea that an individual does not have a privacy interest in documents or information stored with or held by third-parties has come under increasing scrutiny by the courts. In 2013, Justice Sotomayor concurred in *United States v Jones*, a vehicle tracker case and stated, "more fundamentally, it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks." *United states v Jones*, 565 U.S. 400, 417 (2012).

1 Mr. Kube had a reasonable expectation of privacy in the mobile phone he shared with his wife because, among other reasons, he stored intimate marital communications on it. Mr. Kube did not forfeit that reasonable expectation of privacy by storing these communications on a device for which he did not have exclusive use and control.

The Court indicated some skepticism about whether one spouse can have a reasonable expectation of privacy in materials stored on the other spouse's phone. Certainly, both spouses would expect those communications to be private from third parties. Similarly, one spouse could reasonably expect another to not share intimate communications. That expectation of privacy would be even more reasonable if the couple has a history and mutual understanding that respected that privacy. Society certainly acknowledges and accepts the privacy of marital communications.

The government has argued that the challenged seizure and search did not involve marital communications but was limited simply to photographs of an injury. That argument fails. The initial illegal seizure compounded by the subsequent illegal search were directed at property (the telephone) and materials (its contents) in which Mr. Kube had both ownership and privacy interests. In *United states v Alderman*, the government argued that defendant Alderman could not suppress incriminating conversations monitored in his home because he was not a party to those conversations and therefor had no privacy interest in them. *United States v Alderman*, 394 U.S. 165, 176-77 (1969). The illegal search of his "house" which is explicitly prohibited by the Fourth Amendment was sufficient to mandate suppression. *Id.* at 177. In this case, the illegal search of Mr. Kube's "papers and effects" mandates suppression.

Another reason that Mr. Kube has a reasonable expectation of privacy in the telephone is that he owned it and used it. The Kubes' telephones are more accurately characterized as 'theirs" or "ours" as opposed to his and hers. Mr. Kube had the right to and did regularly use the phone which was illegally seized and search and Mrs. Kube did the same with their other phone. Certainly, it would have been reasonable for Mr. Kube to have been upset if Mrs. Kube had disposed of the phone without his consent. Society in general accepts the premise that one spouse is not expect to come home and announce to the other that a cell phone has been given away and

DEFENDANT'S SUPPLEMENTAL BRIEFING
TO MOTION TO SUPPRESS CELL PHONE PHOTOS

a third-party now has access to all its contents and its number. It is no stretch Mr. Kube has a legitimate expectation of privacy in the cell phone that only he and his wife have the ability to open and that was seized and searched without a warrant.

## CONCLUSION

For all the above reasons, Mr. Kube contests the seizure and search of the mobile device in which he holds an ownership interest and stores private sensitive marital communications and requests the Court suppress the photographs taken from the phone in Mrs. Kube's possession.

Dated: June 8, 2020

                                                /s/ *Carol Ann* Moses
                                                CAROL ANN MOSES
                                                Attorney for Defendant
                                                PAUL S. KUBE