US v. Kube (1:19-cr-257-NONE)
US Ex. D
Case 1:19-cr-00257-NONE-SKO   Document 65-4   Filed 06/10/20   Page 1 of 6

1
2
3
4  SUPERIOR COURT OF WASHINGTON IN AND
5  FOR THE COUNTY OF DOUGLAS
6
7  STATE OF WASHINGTON,
8          Plaintiff,                          CASE NO.: 19-1-00149-09
9      vs.
10  PAUL KUBE,                                 DECLARATION OF PAUL KUBE
11          Defendant.
12
13  I, the undersigned, declare as follows:
14
15      The "Affidavit for Search Warrant" signed by Deputy Marc Lemons on August 6, 2019, contains
16  numerous patently false and misleading statements ("Lemons Affidavit"). Deputy Lemons falsely states:
17  "I have previous history with Erin regarding domestic violence between her and her husband Paul S.
18  Kube." (Lemons Affidavit, page 2).  No such history exists and this statement is utterly and completely
19  false.
20      Deputy Lemons falsely and/or misleadingly states: "he [Paul Kube] did not return my calls until
21  days later.  I have still not had contact with Paul reference this case." (See Deputy Lemons Affidavit,
22  page 2.)  The truth is absolutely the opposite.  At the time Deputy Lemons signed the Affidavit on
23  August 6th, 2019,  I had called Deputy Lemons three times and left at least two voicemail messages for
24  Deputy Lemons that he did not return, ever.  Attached as Exhibit "A" is a true and correct copy of a
25  screenshot (Screenshot 20191217) of my cell phone showing on July 11, 2019, two calls to Rivercom
26  ((509)663-9911) for Deputy Lemons at 5:16 p.m. on July 11, 2019, and one call on July 12, 2019, at
27  5:22 p.m.
28      When Deputy Lemons signed and filed the Affidavit on August 6, 2019, more than twenty five
29  (25) days had passed since I left the voicemail message for Deputy Lemons on July 11th.  Deputy
30  Lemons chose not to return my repeated calls and voicemails.  Instead, Deputy Lemons made the false

DECLARATION OF PAUL KUBE-1

*KOTTKAMP, YEDINAK &*
*ESWORTHY, PLLC*
*Attorneys at Law*
*435 Orondo*
*P.O. BOX 1867*
*WENATCHEE, WA 98807-1867*
*(509) 667-6667*

KUBE_000547

US v. Kube (1:19-cr-257-NONE)
US Ex. D
Case 1:19-cr-00257-NONE-SKO   Document 65-4   Filed 06/10/20   Page 2 of 6

1   and/or misleading statement under oath that I "did not return my calls." The truth is Deputy Lemons

2   did not return my calls and I was the last one to call back. Twenty-five (25) days went by between the

3   time of the first voicemail I left and Deputy Lemons' false and/or misleading statement under oath.

4        Deputy Lemons' own report includes this statement on July 9, 2019: "As I leaving [sic] CWH

5   [Central Washington Hospital], I contacted Sgt. Baker to apprise him of the incident. Sgt. Baker

6   believed there was not enough probable cause to arrest Paul without further statements from Paul.

7   (Emphasis added). However, despite knowing the importance of my statement, as emphasized by Sgt.

8   Baker above, Deputy Lemons chose not to speak with me. He knew that the accusation of "history of

9   domestic violence" was false. His statement about my failure to cooperate by calling him back was also

10  false at the time Deputy Lemons signed the Affidavit some twenty five (25) days after I left voicemail

11  messages for him to call me back. Had Deputy Lemons actually called me back rather than make false

12  and/or misleading statements under oath in his Affidavit, Deputy Lemons would have learned the

13  following:

14        I arrived home from work on July 8, 2019, at 5:47:17 PM. The reason why I know that exact

15  information is due to the fact that I was just days away from successfully completing a five year term in

16  which I had an alcohol interlock device on my vehicle and I obtained copies of those records to provide

17  to Deputy Lemons assuming he was going to call me back. Attached as Exhibit "B" are true and correct

18  copy of the interlock records "Scanned from a Xerox Multifunction Printer.pdf (160 KB)" for time

19  period of July 8-10, 2019. ("Vehicle Records").

20        When I arrived home at 5:47:17 PM on July 8, 2019, my wife Erin Cooley was indeed very

21  intoxicated as referenced in her Declaration on page 2, lls 17-19. (See Declaration of Erin Cooley

22  December 6, 2019 ("Cooley Declaration")). As is verified by Vehicle Records, I was not drinking on

23  July 8, 2019 through July 10, 2019, despite any misleading and unsupported claims by Deputy Lemons

24  to the contrary.

25        Had Deputy Lemons actually called me back rather than make the false and/or misleading

26  statements under oath in the Deputy Lemons Affidavit, Deputy Lemons would have also learned that

27  while I was asleep with the CPAP machine operating, Erin removed the CPAP off my face waking me

28  up involuntarily on the evening of July 8, 2019. Attached as Exhibit "C" are true and correct copies of

29  the CPAP (continuous positive airway pressure) machine records which confirms that I was asleep for

30

DECLARATION OF PAUL KUBE-2

*KOTTKAMP, YEDINAK &*
*ESWORTHY, PLLC*
*Attorneys at Law*
*435 Orondo*
*P.O. BOX 1667*
*WENATCHEE, WA 98807-1667*
*(509) 667-8667*

**KUBE_000548**

US v. Kube (1:19-cr-257-NONE)
US Ex. D
Case 1:19-cr-00257-NONE-SKO   Document 65-4   Filed 06/10/20   Page 3 of 6

1  "22 mins. 1 secs" on evening of July 8, consistent with what Erin describes what happened in the Cooley

2  Declaration, page, 2, lls 22-27.

3       Had Deputy Lemons actually called me back rather than make the false and/or misleading

4  statements under oath in the Affidavit, Deputy Lemons would have also learned that consistent with the

5  Cooley Declaration, I was not at fault in any way for any injuries Erin sustained.

6       In addition to the false statements made by Deputy Lemons in his Affidavit, Deputy Prosecuting

7  attorney N. Smith "Smitty" Hagopian repeated the patently false narrative of Deputy Lemons' Affidavit

8  that there is a history of domestic violence between myself and Erin Cooley at the hearing on December

9  16, 2019. Absolutely no truth exists of that false narrative started by in Deputy Lemons' Affidavit and

10  falsely repeated by the unsworn statements of Mr. Hagopian.

11       Also, at the hearing of December 16, 2019, Mr. Hagopian completely ignored the holding of

12  valid precedent cited by Mr. DiTommaso's brief *State v. Davidson*. Instead of addressing the law as

13  articulated in *Davidson*, Mr. Hagopian's brief references legislative findings which generically reference

14  "recent decisions" of the federal and state Supreme Courts. *Davidson* is not a Supreme Court case so

15  obviously that is not what the legislature was referencing in those findings, but that does not stop the

16  State from ignoring the holding in *Davidson* and confuse this Court with that spin. Nothing in the

17  legislative findings addresses the *Davidson* holding. District Courts can issue warrants anywhere in the

18  state as long as the District Court would have jurisdiction over the alleged matter.

19       Jurisdiction is a bright line rule. Either a court has power to act or it does not. It is completely

20  irrelevant if past practice mistakenly thought the District Courts had such power. The *Davidson* case

21  clearly holds that the District Court only has that jurisdiction (power) **if** the District Court has the power

22  to hear the case. Here, the District Court clearly did not have the power to hear felonies and under the

23  holding in *Davidson*, the District Court lacked the power/jurisdiction to issue the warrant. The State

24  cannot simply spin that law out of existence. The State must address the actual holding of the *Davidson*

25  case, which it has not done. (*State v. Davidson*, 26 Wn.App. 623, 625 (1980)).

26       Also, at the hearing of December 16, 2019, Mr. Hagopian attempts to claim the State complied

27  with the statute to obtain the medical records. The State did not. The portion of the statute the State is

28  <u>now</u> relying on limits the information they can obtain without the patient's permission to specific

29  itemized narrow information as follows:

30

DECLARATION OF PAUL KUBE-3

*KOTTKAMP, YEDINAK &*
*ESWORTHY, PLLC*
*Attorneys at Law*
*435 Orondo*
*P.O. BOX 1667*
*WENATCHEE, WA 98807-1667*
*(509) 667-8667*

**KUBE_000549**

1   "the following information, if known:

2   (i) The name of the patient;

3   (ii) The patient's residence;

4   (iii) The patient's sex;

5   (iv) The patient's age;

6   (v) The patient's condition;

7   (vi) The patient's diagnosis, or extent and location of injuries as determined by a health care

8   provider;

9   (vii) Whether the patient was conscious when admitted;

10  (viii) The name of the health care provider making the determination in (b)(v), (vi), and (vii) of

11  this subsection;

12  (ix) Whether the patient has been transferred to another facility; and

13  (x) The patient's discharge time and date."

14

15  RCW 70.02.200(2)(b).

16

17      The health care provider "shall disclose" that specific and limited information pursuant to RCW

18  70.02.200(2).  It makes no sense that the legislature would have made the specific list of information

19  applicable if it was intended to be broader than that specific narrowly tailored information.  But, the

20  officer and/or warrant did not request that specific information nor was the information produced limited

21  to that specific information, instead the Lemons Affidavit was extremely broad requesting: "including

22  but not limited to, emergency department record(s), laboratory test(s) & report(s), diagnostic test(s) &

23  report(s), pathology test(s) & report(s), radiology report(s), radiology image(s), photograph(s), operative

24  report(s), EKG report(s), consultation(s), itemized billing records, discharge summary(s) and medical

25  staff notes."  (Lemons Affidavit at 1).

26      The State clearly failed to follow the applicable statutes, regardless of the State's attempt at spin

27  on that issue as well.  Rather, the State's request was not narrowly tailored to limit the information to the

28  enumerated specific information above, rather it was a much, much more broad request for the entire

29  medical record which included protected health care information beyond the scope of the specific

30  itemized information above.   The statute clearly provides for an opportunity for law enforcement to

DECLARATION OF PAUL KUBE-4

*KOTTKAMP, YEDINAK &*
*ESWORTHY, PLLC*
*Attorneys at Law*
*435 Oranda*
*P.O. BOX 1667*
*WENATCHEE, WA 98807-1667*
*(509) 667-8667*

KUBE_000550

US v. Kube (1:19-cr-257-NONE)
US Ex. D
Case 1:19-cr-00257-NONE-SKO   Document 65-4   Filed 06/10/20   Page 5 of 6

1 | obtain "medical records" through that broader request pursuant to RCW 70.02.200(2)(c) which states:
2 | "(c) Pursuant to compulsory process in accordance with RCW 70.02.060." That is the very statute for
3 | which the State failed to comply, which requires notice to the patient.  The State went on a fishing
4 | expedition beyond the itemized scope because the search was not narrowly tailored to the statutory
5 | specific information authorized for disclosure.
6 |
7 |      I declare under penalty of perjury under the laws of the State of Washington that the
8 | foregoing is true and correct.
9 |
10 | SIGNED at _Wenatchee_, Washington on this 18th day of December, 2019.
11 |
12 |
13 | _____
14 | PAUL KUBE
15 |
...

DECLARATION OF PAUL KUBE-5

KOTTKAMP, YEDINAK &
ESWORTHY, PLLC
Attorneys at Law
435 Orondo
P.O. BOX 1667
WENATCHEE, WA 98807-1667
(509) 667-8667

KUBE_000551

US v. Kube (1:19-cr-257-NONE)
US Ex. D
Case 1:19-cr-00257-NONE-SKO   Document 65-4   Filed 06/10/20   Page 6 of 6

9:25

## Phone



**(509) 663-9911**
Wenatchee, WA

5:22 PM

July 11, 2019



**(509) 663-9911 (2)**
Wenatchee, WA

5:16 PM



**(509) 662-7444**
Wenatchee, WA

5:06 PM



**Me**
Mobile

4:21 PM



**(509) 663-9911**
Wenatchee, WA

3:26 PM



**Me**
Mobile

3:00 PM



**(800) 922-0204**
Unsaved

1:36 PM



**Me**
Mobile

9:05 AM

Keypad     **Recents**     Contacts


EXHIBIT
"A"