1   **CAROL ANN MOSES  #164193**
    Attorney at Law
2   7636 N. Ingram Ave., #104
    Fresno, California  93711
3   Telephone:  (559) 449-9069
    Facsimile:   (559) 513-8530
4   carol@yosemitelawyer.com

5   Attorney for Defendant,
    PAUL S. KUBE
6
                    UNITED STATES DISTRICT COURT
7
                    EASTERN DISTRICT OF CALIFORNIA
8

9

10  UNITED STATES OF AMERICA,          )    CASE NO. 1:19-cr-00257-NONE-SKO
                                       )
11              Plaintiff,             )    DEFENDANT PAUL S. KUBE'S
                                       )    OBJECTIONS TO
12                                     )    PRESENTENCE REPORT
    vs.                                )
13                                     )
                                       )    Date:   October 1, 2021
14  PAUL S. KUBE,                      )    Time:   8:30 AM
                                       )    Judge:  Hon. Dale A. Drozd
15                                     )
                Defendant.             )
16  _____)

17

18                     BRIEF STATEMENT OF CASE

19       Paul S. Kube was arrested in Yosemite National Park on September 5, 2019 at the Crane

20  Flat Campground and subsequently charged with 18 U.S.C. §2261(a)(1) – Interstate Domestic

21  Violence (Count One); 18 U.S.C. § 113(a)(4) – Assault by Striking, Beating or Wounding (Count

22  Two); 18 U.S.C. §113(a)(5) – Simple Assault (Count Three); 36 C.F.R. § 2.34(a)(3) – Disorderly

23  Conduct (Count Four).

24       Mr. Kube filed a Motion to Suppress Photographs taken of the victim, Erin Cooley Kube,

25  of her black eye. She repeatedly told National Park Service personnel that she did not want her

26  photograph taken. She repeatedly told rangers she would not give them her phone where the

27  photos were located. Ultimately, she acquiesced, providing photos she took of herself because she

28  felt harassed and coerced to do so. The Motion included a request for an evidentiary hearing

1    which was granted. The Kube matter resolved before a decision was made on the Motion to

2    Suppress.

3        On June 25, 2021, Mr. Kube pleaded guilty to 18 U.S.C. §113(a)(4), Assault by Striking,

4    Beating, or Wounding: a Class A Misdemeanor. Mr. Kube was interviewed by United States

5    Probation Officer Janice Slusarenko via Zoom on July 22, 2021. Sentencing is scheduled for

6    October 1, 2021 before the Honorable Dale A. Drozd.

7                                    FORMAL OBJECTIONS

8        Mr. Kube does not object to the Probation Officer's determination of his criminal history

9    as being a Category II. Mr. Kube accepts complete responsibility for his actions and objects only

10   to the factual issues identified below:

11       Paragraph #7:  Only one witness claims to have seen Mr. Kube strike Mrs. Kube.

12       Paragraph #10:  The victim did not allow rangers to take photographs of her face. The

13   victim did not willingly allow rangers access to her phone to obtain photos she had taken of her

14   face the night of the incident. Eventually, after what she called "being harassed", the victim was

15   coerced under duress by rangers to provide them her phone the next day, on the condition that she

16   would get it back so she could use it to get directions for the drive home to East Wenatchee, WA.

17   This was the subject of the Motion to Suppress filed by Mr. Kube. The Court granted an

18   evidentiary hearing which was held on December 11, 2020. The Kube matter resolved prior to a

19   decision by the Court.

20       Paragraph # 37:  The incident is described as an "Assault/Domestic Violence (felony)".

21   Attached as Exhibit "A" is the Douglas County Sheriff's Office Incident Report #19D01022,

22   which describes this as an "ASNC Assault, Not classified, VEDS Verbal Dispute". There is

23   nothing in the report that indicates anything but a verbal dispute, a denial of any physical assault

24   and an observation by Deputy Melton that Mrs. Kube had been drinking alcohol. Deputies cleared

25   the call because no crimes were committed. This is not domestic violence.

26       Paragraph # 38: Mr. Kube objects to the Court considering the Douglas County Sheriff's

27   Office Report Case No. 19D03715, included as an attachment to Exhibit "B", as factual.

28   Specifically, the objection is to the sentence: "as they (LEO) have responded to multiple calls

1  relating to domestic violence and their drinking," and the inference the statement creates: the

2  Probation Officer's conclusion that "Kube's assaultive behavior towards his wife is continuous

3  and escalating". The law enforcement reports do not show there is an assault by Mr. Kube. There

4  is, however, an indication that Deputy Sheriff Lemons exaggerates and embellishes the truth on

5  more than one occasion. Attached as Exhibit "B" is Nicholas A. Yedinak's Declaration from

6  January 2020, written as Mr. Kube's attorney and provided to the Douglas County Court showing

7  how Deputy Sheriff Lemons "chose to mislead the Court in his Affidavit in Support of Search

8  Warrant by alleging that there were previous acts of domestic violence when clearly, according to

9  the attached reports, there were not". Attached to Exhibit "B" is a statement from Ranger DuPont

10 on his interaction with Deputy Sheriff Lemons.

11        Also attached as Exhibit "C" is the Declaration of Erin Cooley (now Kube) describing the

12 events of July 8, 2019 and as Exhibit "D", the Declaration of Paul Kube of the same date. These

13 attached sworn statements (Exhibit "B", "C" and "D") address the false narrative that there is

14 some history of "domestic violence" between Mr. and Mrs. Kube.

15        The false narrative started with Deputy Sheriff Lemons. According to the sworn statement

16 of Ranger Julian DuPont, which is attached to Exhibit "B", Ranger DuPont was "hoping to clarify

17 the total number of incidents that had involved Mr. Kube and Ms. Cooley". Deputy Sheriff

18 Lemons responded by falsely stating seven incidents. Ranger DuPont was later asked to amend

19 his statement, attached at Exhibit "E".

20        The false narrative of Deputy Sheriff Lemons is further addressed by Nicholas A.

21 Yedinak, Attorney at Law. Mr. Yedinak requested the prosecutor provide the reports involving

22 these "7 domestic incidents". The prosecutor produced five reports, which are attached to

23 Nicholas A. Yedinak's Declaration (Exhibit "B").  Mr. Yedinak states in his Declaration to the

24 Court: "…at no time during these five incidents, was there ever an allegation of domestic

25 violence. Yet, Deputy Lemons chose to mislead the Court in his Affidavit in Support of Search

26 Warrant by alleging that there were previous acts of domestic violence when clearly, according to

27 the attached reports, there was not".

28        The Douglas County reports are not credible evidence established before this Court. While

1   Mr. Kube does acknowledge chaos in the relationship, he is adamant that the reports are

2   inaccurate. The specific details of the allegations are not pivotal in making a sentencing

3   determination in this matter. The reports do state that Mr. Kube reported his wife's aberrant

4   behavior to the police in at least one incident; and in another, Mrs. Kube reported her husband as

5   a missing person.

6        Paragraph #48: When Mr. Kube was released from custody, the Court imposed a no

7   contact order and further ordered Mr. Kube live in a separate residence, which he did for

8   approximately 16 months, until the Court modified its order. Mr. Kube resumed living at home

9   with his wife in December of 2020.

10       Paragraph #55: The defendant graduated from Juanita High School in Kirkland.

11                                    CONCLUSION

12       Mr. Kube objects to the characterization of events in Douglas County by Deputy Sheriff

13   Lemons, which has now been brought forward to this Court. Mr. and Mrs. Kube, as well as Mr.

14   Yedinak, have proffered their analysis and version of the incident. The facts are not established

15   credible evidence in this Court. Should the Court wish to hear details of the Douglas County

16   incidents, the Defense, while not specifically requesting an evidentiary hearing, would welcome

17   an opportunity to subpoena the involved persons and provide testimony for the Court's review.

18

19   Dated: September 17, 2021              */s/ Carol Ann Moses*
20                                          CAROL ANN MOSES
                                            Attorney for Defendant,
21                                          PAUL S. KUBE

22

23

24

25

26

27

28

PAUL S KUBE FORMAL OBJECTIONS TO
PRE-SENTENCE REPORT

4

# EXHIBIT A



# DOUGLAS COUNTY
# SHERIFFS OFFICE
Incident Report for 19D01022

**19D01022**

---

**Nature:** DOMESTIC DISTUR **Address:** 1924 NW CASCADE AVE, EAST WENATCHEE WA 98802

---

**Complainant:** 118346 **When Reported:** 23:05:50 03/03/19
**Last:** COOLEY **First:** ERIN **Mid:** LEE
**DOB:** 07/05/82 **Dr Lic:** COOLEEL181ME **Address:** 1924 NW CASCADE AVE
**Race:** W **Sex:** F **Phone:** (775)544-7064 **City:** EAST WENATCHEE, WA 98802

---

### Offense Codes
**Reported:** ASNC Assault, Not Classified
**Observed:** VEDS Verbal Dispute
**Additional Offense:** VEDS Verbal Dispute

---

### Involvements

| Date | Type | Description | |
|------|------|-------------|---|
| 03/03/19 | Name | COOLEY, ERIN LEE | Complainant |
| 03/03/19 | Name | KUBE, PAUL STEVEN | MALE HALF |
| 03/03/19 | Cad Call | 23:05:50 03/03/19 DOMESTIC DISTUR | Initiating Call |
| 09/06/19 | DS | PAUL HOLTHOUSE PARKRANGER | Dissemination |

---

**Supplement**
MELTON INITIAL 3-3-19

INVESTIGATIVE SUMMARY:

On 3-3-19 at 2309 hours Rivercom dispatched a domestic disturbance complaint at 1924 NW Cascade Ave. The RP, Erin Cooley, said her husband, Paul Kube, had a verbal argument and Paul left the area.

I arrived and found Erin speaking with Deputy Lemons. Erin said there was nothing physical and she and Paul were arguing because she didn't tell him she had retained an attorney and she also answered the phone when she was at lunch

**UNREDACTED COPY FROM DCSO**

Any secondary dissemination of this report must conform to the requirements of RCW 10.97, RCW 42.56 and all other state and federal statutes regarding record dissemination.

KUBE_008

with a male colleague which further angered Paul.

Erin did not know where Paul went and did not know if he had a phone with him.
Erin was offered a ride to a hotel or a friends house as she had been drinking,
Erin declined.  No signs of a physical assault were visible on Erin and
she denied a physical assault occurring.

I cleared contact with Erin and checked the area for Paul, I was unable to
locate Paul in the area and attempted to call both numbers in local with no
answer.  No crimes committed and I was unable to locate Paul. I cleared with
nothing further.

DISPOSITION: Closed

ATTACHMENTS:

DISTRIBUTION:

This document is being submitted to a judge, magistrate, court and/or prosecutor
from an electronic device that is owned, issued and/or maintained by a criminal
justice agency.

I certify (declare) under penalty of perjury under the laws of the State of
Washington that the foregoing is true and correct.  (RCW 9A.72.085)

Deputy Taylor Melton  DO22
Douglas County Sheriff's Office
Washington State
Time:Mon Mar 04 00:01:22 ST  2019

Approved MWB9
Mon Mar 04 03:21:43 ST  2019

UNREDACTED COPY FROM DCSO

Any secondary dissemination of this report must
conform to the requirements of RCW 10.97, RCW
42.56 and all other state and federal statutes
regarding record dissemination.

## Name Involvements:
**MALE HALF :** S131844
**Last:** KUBE **First:** PAUL **Mid:** STEVEN
**DOB:** 07/09/65 **Address:** 1924 NW CASCADE AVE
**Race:** W **Sex:** M **Phone:** ( ) - **City:** EAST WENATCHEE, WA 98802

**Complainant :** 118346
**Last:** COOLEY **First:** ERIN **Mid:** LEE

KUBE_009

**DOB:** 07/05/82 **Address:** 1924 NW CASCADE AVE
**Race:** W **Sex:** F **Phone:** (775)544-7064 **City:** EAST WENATCHEE, WA 98802

**UNREDACTED COPY FROM DCSO**

Any secondary dissemination of this report must
conform to the requirements of RCW 10.97, RCW
42.56 and all other state and federal statutes
regarding record dissemination.

KUBE_010

KUBE_000094

# EXHIBIT B

1
2
3
4
5   SUPERIOR COURT OF WASHINGTON IN AND
    FOR THE COUNTY OF DOUGLAS
6
7
8   STATE OF WASHINGTON,
                    Plaintiff,              CASE NO.: 19-1-00149-09
9
10  vs.
                                            DECLARATION OF
11  PAUL KUBE,                              NICHOLAS A. YEDINAK
                    Defendant
12

13          COMES NOW Nicholas A. Yedinak, under penalty of perjury under the laws of the State
14  of Washington and declares as follows:
15          1.      I am over the age of 18 years, am competent to testify to the facts set forth herein
16  and have personal knowledge of said facts;
17          2.      I represent the Defendant in this matter, Mr. Paul Kube.  Attached to this
18  declaration is a report from National Parks Service Law Enforcement Agent J. Dupont, (Exhibit "A").
19  That report reflects that Officer Dupont was contacted by Deputy Lemons of the Douglas County
20  Sheriff's Office.  Deputy Lemons stated that I (J. Dupont) "should amend my records request to Douglas
21  County in order to get that information."  The report reflects that Deputy Lemons represented that he is
22  the case agent for "multiple domestic incidents" where Mr. Kube and Ms. Cooley live.
23          3.      After I received this report, I requested that the prosecutor provide me the reports
24  involving these "7 domestic incidents" referenced in the report.  Attached as Exhibit "B" is a copy of 5
25  reports Mr. Hagopian provided to me (not 7).
26          4.      The Court will note that, at no time during these five (5) "incidents", was there
27  ever an allegation of domestic violence.  Yet, Deputy Lemons chose to mislead the Court in his
28  Affidavit in Support of Search Warrant by alleging that there were previous acts of domestic violence
29  when clearly, according to the attached reports, there was not.
30

DECLARATION OF                              *KOTTKAMP, YEDINAK & ESWORTHY, PLLC*
NICHOLAS A. YEDINAK - 1                     *Attorneys at Law*
                                            *435 Orondo*
                                            *P.O. BOX 1667*
                                            *WENATCHEE, WA 98807-1667*
                                            *(509) 667-8667*

1         5.     Interestingly, Deputy Lemons seems to have told Officer Dupont that he had been

2    involved in these "7" incidents when, in fact, there were only 5, and of those 5, he appears to have been

3    involved in only 2.  So, again, an apparent misleading statement by Deputy.

4

5         SIGNED UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF

6    WASHINGTON AT WENATCHEE, WASHINGTON THIS __*/ 3*__ DAY OF JANUARY, 2020.

7

8

9

10   Nicholas A. Yedinak

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

DECLARATION OF
NICHOLAS A. YEDINAK - 2

*KOTTKAMP, YEDINAK & ESWORTHY, PLLC*
*Attorneys at Law*
*435 Orondo*
*P.O. BOX 1667*
*WENATCHEE, WA 98807-1667*
*(509) 667-8667*

LAW ENFORCEMENT SENSITIVE (FOUO)

## General Report

U.S Department of the Interior   National Park Service

*Printed:*         09/09/2019 14 21 by 527
*Incident:*      NP19151029 Law Enforcement @09/05/2019 22:30

| | |
|---|---|
| *Author*    #527 DUPONT, J | *Report time*   09/09/2019 13 39 |
| *Entered by:* #527 DUPONT, J | *Entered time*  09/09/2019 13 39 |

*Report:*
On 9/8/2019 at approximately 1730 hours I was contacted by a Deputy Lemons of the Douglas County, WA Sheriff's Office  Deputy Lemons is the case agent for multiple domestic incidents where Mr.Kube and MS  Cooley live. Deputy Lemons indicated that he had been involved in approximately 7 incidents at their residence. Deputy Lemons stated that I should amend my records request to Douglas County in order to get that information

I submitted an additional records request to Douglas County

--- END OF REPORT---

*Ex  A*

LAW ENFORCEMENT SENSITIVE (FOUO)

KUBE_000040

## Supplement
R. Bravo DO24

INVESTIGATIVE SUMMARY:

On 12/08/2017 at approximately 2227 hours, Rivercom advised of a domestic
disturbance at 1924 Nw Cascade Ave in East Wenatchee. The RP, Paul S. Kube,
reported his soon to be ex-wife was going to set the house on fire and they were
arguing.

Deputy Schlaman and I arrived to the location; I had rang the doorbell several
times. A male who identified himself as the RP came to the door. He stepped
outside and was highly intoxicated; he had difficulty speaking and was unsteady
on his feet. Paul repeatedly thanked us for coming and said we could leave.
Paul said he did not need us there anymore. I told Paul he had called so I
needed to know what had happened. Paul was hesitant to speak, he told me
everything was fine and we could leave. I asked if there was anything physical
or any threats and he said no. I asked Paul if we could speak with his wife.
Paul did not want us to enter the home and said he would have her come outside.

The female came out with Paul, she identified herself as Erin Cooley, she told
me she and Paul had an argument over wanting to go for a walk and Paul consuming
marijuana. Both parties appeared to be calm, I told them to work their issues
out and stay civil for the night.


DISPOSITION: Closed

ATTACHMENTS:

DISTRIBUTION:


This document is being submitted to a judge, magistrate, court and/or prosecutor
from an electronic device that is owned, issued and/or maintained by a criminal
justice agency.

I certify (declare) under penalty of perjury under the laws of the State of
Washington that the foregoing is true and correct. (RCW 9A.72.085)


Deputy R. Bravo DO24
Douglas County Sheriff's Office
Washington State
Time: Sat Dec 09 02:59:09 PST 2017

Approved RMP-7
Sat Dec 09 16:48:14 PST 2017

Ex B

12/23/19

Supplement
Sanchez initial

INVESTIGATIVE SUMMARY:  On 05/03/18 at 0900 hours, Erin Cooley requested a phone call reference a missing person's report.

I was driving by Cooley's residence as the call came out and stopped to talk to her.  Cooley said her husband, Paul Kube left last night around 1900 hours after they had a verbal argument.  Cooley said he did not come home and was not answering his cell phone.

Cooley said there was nothing physical last night and Paul has stayed in motels in the past for similar incidents.  She said in the last year, Paul has left and not return for a day, at least four times.  I asked if she called his work to see if he was there.  Cooley said she drove by and his vehicle was not there.

I called Paul's office and spoke with his para-legal, Lisa Russell.  She told me Paul sent an e-mail this morning around 0830 informing her, he would be late to work today.  I relayed that information to Cooley and she said she felt better now and would wait for his return.

I cleared and parked near by to type my report.  As I finished, I saw Paul's pickup arrive.  He returned home.

DISPOSITION: Closed

ATTACHMENTS:

DISTRIBUTION:


This document is being submitted to a judge, magistrate, court and/or prosecutor from an electronic device that is owned, issued and/or maintained by a criminal justice agency.


I certify (declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.  (RCW 9A.72.085)


Deputy J. Sanchez DO12
Douglas County Sheriff's Office
Washington State
Thu May 03 09:36:56 PDT 2018

Approved TRS6
Thu May 03 10:02:33 PDT 2018

12/23/19

## Supplement
Lemons Initial

INVESTIGATIVE SUMMARY:

On 08/01/2018 at approximately 0133 hours, RiverCom advised of a 911 hang up at 1924 NW Cascade Ave.  On callback RiverCom spoke to a male who was being vague and stated his wife had called but she was "ok".  When RiverCom asked to speak with the female, the male half stated she was outside and he couldn't find her.  The male identified himself as Paul S. Kube (DOB:07/09/1965).  RiverCom located a female at the residence due to past domestic violence history as Erin L. Cooley (DOB: 07/05/1982)

I arrived in the area and contacted the residence.  Paul answered the door.  Paul was obviously intoxicated, but calm.  I had Paul stay on the front steps of the house, while I went inside and contacted Erin.

Erin stated Paul had been in contact with an ex-wife and she had brought it up to Paul, and a verbal argument had occurred.  Erin was unwilling to give any other information on the incident, but said nothing physical occurred.

I re-contacted Paul, who had spoke with Deputy Baker who had arrived on scene.  Paul stated the argument was verbal only and no assault had taken place.  There was a small scratch on Paul's right cheek, but Paul stated he was on blood thinners and he had not been assaulted.  I asked Paul if this would continue to be an issue tonight and he stated he would separate and get to bed.

I spoke with Erin who also stated they could separate for the night and discontinue the argument.  I then cleared the scene with no further action.


DISPOSITION: Closed

ATTACHMENTS:

DISTRIBUTION:


This document is being submitted to a judge, magistrate, court and/or prosecutor from an electronic device that is owned, issued and/or maintained by a criminal justice agency.

I certify (declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.  (RCW 9A.72.085)

_____

Deputy Marc P. Lemons  DO11
Douglas County Sheriff's Office
Washington State
Time: Thu Aug 02 00:18:12 PDT 2018

Approved RMP-7
Thu Aug 02 20:34:32 PDT 2018

12/23/19

## Supplement
MELTON INITIAL 3-3-19

INVESTIGATIVE SUMMARY:

On 3-3-19 at 2309 hours Rivercom dispatched a domestic disturbance complaint at 1924 NW Cascade Ave.  The RP, Erin Cooley, said her husband, Paul Kube, had a verbal argument and Paul left the area.

I arrived and found Erin speaking with Deputy Lemons.  Erin said there was nothing physical and she and Paul were arguing because she didn't tell him she had retained an attorney and she also answered the phone when she was at lunch with a male colleague which further angered Paul.

Erin did not know where Paul went and did not know if he had a phone with him. Erin was offered a ride to a hotel or a friends house as she had been drinking, Erin declined.  No signs of a physical assault were visible on Erin and she denied a physical assault occurring.

I cleared contact with Erin and checked the area for Paul, I was unable to locate Paul in the area and attempted to call both numbers in local with no answer.  No crimes committed and I was unable to locate Paul.  I cleared with nothing further.

DISPOSITION: Closed

ATTACHMENTS:

DISTRIBUTION:


This document is being submitted to a judge, magistrate, court and/or prosecutor from an electronic device that is owned, issued and/or maintained by a criminal justice agency.


I certify (declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.  (RCW 9A.72.085)

---

Deputy Taylor Melton   DO22
Douglas County Sheriff's Office
Washington State
Time: Mon Mar 04 00:01:22 ST  2019

Approved MWB9
Mon Mar 04 03:21:43 ST  2019

12/23/19

### Narrative

On June 18, 2019 at approximately 2143 hours, Rivercom advised me of a domestic
disturbance call at 140 19th ST NW #A; Transportation land services. Upon
arriving, I contacted both parties on the loop trail. Both parties advised us it
was only verbal. No crime was observed, end of report.

_____

Responsible LEO:

_____

Approved by:

_____

Date

12/23/19

NW Cascade Ave, but it appeared no one was home. I called Paul's cell phone, which went straight to voicemail and left a message with Paul's voicemail asking him to contact me reference the incident. I then drove to his office at 300 Eastmont Ave and observed no one at the location.

On 07/10/2019 at approximately 0108 hours, Erin requested I respond to her location to talk about the incident further. I arrived at the residence and contacted Erin, who was extremely intoxicated. I went inside her home and noticed dried blood drops on the tile floor in her kitchen and hallway. I asked what she needed to speak with me about and she stated she wanted to "re-nig" on the statements she made earlier to me at CWH. Erin stated she spoke with Paul and she didn't want to assist in any way with the investigation. As I was leaving the scene I again attempted to contact Paul by phone, leaving him another message.

On 07/10/2019 at approximately 1700 hours, I signed into service and noticed a voicemail in my e-mail inbox. I played the voicemail, which was from Paul stating he would willingly speak with me about the incident. I then called Paul with the number he provided in the voicemail and received no answer. At approximately 2115 hours, I attempted to contact Paul at his residence but no one was home. I again called Paul who did not answer. I left a message with Paul asking him to call me back. As of the typing of this report, I have still not received a call from Paul reference this case.


DISPOSITION: Forward to DCPA

ATTACHMENTS: Photos
  DV Packet
  Voicemail from Paul

DISTRIBUTION: DCPA


This document is being submitted to a judge, magistrate, court and/or prosecutor from an electronic device that is owned, issued and/or maintained by a criminal justice agency.


I certify (declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct. (RCW 9A.72.085)


Deputy Marc P. Lemons  DO11
Douglas County Sheriff's Office
Washington State
Time: Wed Jul 10 23:12:15 PDT 2019

Approved MWB9
Fri Jul 12 17:35:27 PDT 2019

01-10-20;01:21PM;                        Nick Yedinak            ;509 745 8670          #  17 /18

**Supplement**
Lemons Initial

INVESTIGATIVE SUMMARY:

On 07/09/2019 at approximately 1752 hours, RiverCom advised of a
domestic disturbance at 1924 NW Cascade Ave.  The reporting party, an ER nurse
from CWH was calling on behalf of Erin L. Cooley (DOB: 07/05/1982), who was
involved in a domestic violence situation.

I arrived on scene and contacted Erin, who had swelling to her cheeks,
nose and eyes.  I could see Erin had a possible broken nose and dried blood
covering her hands.  I am familiar with Erin and the DV history between her and
her husband Paul S. Kube (DOB: 07/09/1965).  I have responded to Paul and Erin's
home numerous times due to their drinking and domestic violence.  Each time I
speak to either party they state no assault took place.  I believe Erin protects
Paul, who, as an attorney, knows what to say to law enforcement reference DV
situations.

As I began speaking with Erin, she was hesitant to give me any
information on what had occurred.  Erin stated her and Paul were drinking the
night of 07/08/2019, packing items as they were separating.  Erin stated she
grabbed a framed photo off the wall and Paul attempted to grab it from her.
Erin stated they began getting physical with each other and the next thing she
remembers is waking up with blood coming from her nose.  Erin stated she put
frozen peas on her face and went to bed.  Erin stated she slept most of the day.

Erin stated she then woke up and attempted to contact Paul who was not
at the residence.  Erin stated she got a hold of Paul at his law firm, and Paul
stated she had struck him while he was asleep.  Paul said he pushed her away
from him and she fell, striking her nose.  Erin stated it was possible as she
didn't have any memory of how her nose/face received trauma.

Erin stated she was afraid to get Paul in trouble and wouldn't assist in
the investigation further than the information she had given.  Erin would not
give me a recorded or written statement, and did not want to fill out a medical
records release.  I was able to get a minimal amount of photos from Erin.

When I asked her where I could contact Paul, she stated, "you wont find
Paul," and, "He probably left town."  Erin also asked I not check his office at
300 Eastmont Ave.  Erin would change from being cooperative, to being afraid of
Paul getting in trouble.  Erin at no time gave a definitive reason as to what
happened to her nose/face.  Erin did state later, after seeing her injuries, she
attempted to call 911, but Paul had taken her cell phones.  Erin stated, "I even
attempted to Google. *How to get a hold of 911 without a phone*."

I completed what sections of the DV packet Erin would assist me in
completing and issued her the DV resource page.  As I was about to end my
contact with Erin, the nurse arrived to discharge Erin, stating she had a
fractured nose.

I told Erin I would be attempting to contact Paul reference the assault,
and Erin stated ok.

As I leaving CWH, I contacted Sgt. Baker to apprise him of the incident.
Sgt. Baker believed there was not enough probable cause to arrest Paul without
further statements from Paul.  I attempted to contact Paul at his home at 1924

01-10-20;01:21PM;                               Nick Yedinak            ;509 745 0670                 # 4/ 10

*Incident Report for Incident 19D03715*                                              *Page 3 of 6*

**Narrative**

Responsible LEO:

Approved by:

Date

07/17/19

01-10-20;01:21PM;                              Nick Yedinak        ;509 745 8670        #  5/ 18



*Incident Report for Incident 19D03715*                                    *Page 2 of 6*

| Modus Operandi: | Description : | Method : |
|---|---|---|

## Involvements

| Date | Type | Description | |
|---|---|---|---|
| 07/09/19 | Name | CENTRAL WASHINGTON HOSPITAL, | Complainant |
| 07/09/19 | Name | COOLEY, ERIN LEE | VICTIM |
| 07/09/19 | Name | KUBE, PAUL STEVEN | SUSPECT |
| 07/09/19 | Cad Call | 17:52:59 07/09/19 DOMESTIC DISTUR | Initiating Call |

07/17/19

01-10-20;01:21PM;                          Nick Yedinak      ;509 745 8670          # 4/ 18

# Spillman Data Systems, Inc.

Incident Report for Incident 19D03715

| | |
|---|---|
| Nature: DOMESTIC DISTUR | Address: 1924 NW CASCADE AVE |
| Location: DE20 | EAST WENATCHEE WA 98802 |

| | | |
|---|---|---|
| Offense Codes: ASSM | | |
| Received By: DEMYER JESSICA | How Received: T | Agency: DCSO |
| Responding Officers: LEMONS M, MELTON T, BAKER M | | |
| Responsible Officer: LEMONS M | Disposition: CLO 07/12/19 | |
| When Reported: 17:52:59 07/09/19 | Occurred Between: 17:51:57 07/09/19 and 17:51:57 07/09/19 | |

| | | |
|---|---|---|
| Assigned To: | Detail: | Date Assigned: **/**/** |
| Status: | Status Date: **/**/** | Due Date: **/**/** |

| | | | |
|---|---|---|---|
| Complainant: CWH | | | |
| Last: CENTRAL WASHINGTON HOSPITAL | First: | Mid: | |
| DOB: **/**/** | Dr Lic: | Address: 1201 S MILLER ST | |
| Race:       Sex: | Phone: (509)662-1511 | City: WENATCHEE, WA 98801 | |

## Offense Codes

| | |
|---|---|
| Reported: ASNC Assault, Not Classified | Observed: ASSM Assault, Simple |
| Additional Offense: ASSM Assault, Simple | |

## Circumstances

IBR IBR COMPLETED

| Responding Officers: | Unit : |
|---|---|
| LEMONS M | D11 |
| MELTON T | D22 |
| BAKER M | D9 |

| | |
|---|---|
| Responsible Officer: LEMONS M | Agency: DCSO |
| Received By: DEMYER JESSICA | Last Radio Log: 01:46:41 07/10/19 CMPLT |
| How Received: T Telephone | Clearance: SA Supervisor's Approval |
| When Reported: 17:52:59 07/09/19 | Disposition: CLO Date: 07/12/19 |
| Judicial Status: | Occurred between: 17:51:57 07/09/19 |
| Misc Entry: | and: 17:51:57 07/09/19 |

07/17/19

# EXHIBIT C

## DECLARATION OF ERIN COOLEY

I, Erin Cooley, under penalty of perjury under the laws of the State of Washington declares as follows:

I am the alleged victim in this case and meet the definition of an aggrieved party under CrR 2.3(e) and set forth the following based upon personal knowledge and in support of this motion.

I am married to the defendant Paul Kube.

On the morning of July 9, 2019, I woke up and was concerned with the condition of my nose. The prior night I was very intoxicated. I suffer from Attention Deficit Disorder. When I went to the hospital (I did not initially go to the emergency room rather the walk-in clinic referred me there as they did not have the either personnel or equipment to do a CT scan on my nose) and was worried about clotting.

Because I was so intoxicated I could not recall what had occurred the prior evening and told my medical providers that and told the investigating officer, Lemons the same.

However, given the amount of time that has elapsed I have been able to search my memory and this is what happened:

I work as a sales representative in Central Washington and have been in that position for the last 15 years. I had gotten home about 4:00 p.m. that day and started drinking wine and by the time Mr. Kube got home between 6:00 and 6:30 I was drunk.

Mr. Kube had not done what I had asked him to do previously regarding cleaning up the outside of the house and I confronted him and yelled at him about this. He then dutifully went outside and started pulling weeds, etc.

I went back inside the home and fell asleep in the front room. When I woke up I was still angry at Mr. Kube. This was between 9:00 and 9:30 p.m. Mr. Kube was already in bed. I took his phone off of the window sill and pulled his CPAP off of his face. I then continued on with the argument that I had started when he first got home earlier in the evening. Mr. Kube got up (still fully clothed) and went to get his keys from the closet to leave.

I went to the pool room where we have a picture of a memorial service which is very important to Mr. Kube. I have been known to destroy property when I am angry, which I was that evening, but I took the picture to put it in the office to make sure I did not destroy it out of anger.

MOTION OF AGGRIEVED PARTY FOR THE
RETURN AND SUPPRESSION OF MEDICAL
RECORDS AND TESTIMONY
Page 2

LAW OFFICE OF TONY DiTOMMASO, PS
23 South Wenatchee Avenue, Suite 201
Wenatchee, WA 98801
telephone (509) 665-8776  fax (509) 665-0397

1    After taking the picture off the wall I started walking towards the office and Mr. Kube, who was

2  on his way out of the door, tried to take the picture away from me. I assume he thought I was going to

3  destroy it. I had the picture in both of my hands, in front of my face when Mr. Kube grabbed the picture

4  and we started pulling it back and forth. I overcame Mr. Kube's attempts to take it away from me,

5  resulting in Mr. Kube losing his grip on the picture which came back at me because I was pulling on it,

6  hitting me in the face causing my nose to start bleeding. I put the picture on the ground, thankful that it

7  had not been damaged and ran to the kitchen to get some frozen peas out of the freezer to put on my face

8  and then I went to the front room to sleep. By that point Mr. Kube had left.

9    The next day I called in sick in the morning and went back to bed. I got up around 2:00 in the

10  afternoon, went into the bathroom and saw my swollen nose. I saw blood going to the kitchen and as

11  indicated above, was concerned about my nose so I called the Cigna Insurance nurse line and talked to a

12  nurse. I told her I had injured my nose but that it was not hurting. It was suggested that I go to walk-in

13  clinic as it did not seem to be a serious physical injury, but the nurse was concerned about clotting. I did

14  then go to the walk-in clinic.

15    The nurse at the walk-in clinic recommended a CT scan and the only CT scan available was at

16  the emergency room so I went there.

17    I still had not cleaned up the blood on my face and hands when I went to the walk-in clinic and I

18  wanted to go home to get cleaned up and take a shower before going to the emergency room but the

19  walk-in nurse said no.

20    I called Mr. Kube on the way to the emergency room to ask him what had happened the previous

21  evening because I could not recall how my nose got injured. Mr. Kube told me simply that I was

22  completely out of control the prior night.

23    At the emergency room everyone suspected domestic violence. No domestic violence occurred.

24  I have attended the SAGE class on domestic violence and understand what domestic violence is and Mr.

25  Kube did not commit domestic violence against me that evening. The only thing that Mr. Kube did that

26  evening was try to prevent me from destroying the picture.

27    While I was at the ER the police were called. I refused to give a statement. There was no

28  recording of any conversation. I told the officer that I was not assaulted.

29    The officer wanted me to fill out a form and give a written statement and I refused to do so.

30    At no time did the officer ask me if he could get my medical records which of course concern my

private affairs.

MOTION OF AGGRIEVED PARTY FOR THE
RETURN AND SUPPRESSION OF MEDICAL
RECORDS AND TESTIMONY
Page 3

LAW OFFICE OF TONY DiTOMMASO, PS
23 South Wenatchee Avenue, Suite 201
Wenatchee, WA 98801
telephone (509) 665-8776  fax (509) 665-0397

1    Because I believed that Lemon believed I was assaulted, after I went home from the emergency
2    room, I called him over to show him as best I could the blood tracks from where the picture hit my nose,
3    as described above, and the tracking of the blood from that spot into the kitchen.   Mr. Lemon was less
4    than interested (his boss was with him) and I had been drinking again by the time he got to my home.
5    He did not take any pictures. He saw the frozen peas with blood on the packet.
6    I now believe that Lemon at that point was just looking to arrest Mr. Kube.  I believe Lemon
7    actually showed up at midnight the next night and I did not answer the door.  I was on the phone with
8    my parents at the time. Mr. Kube did come home the following day and we called Mr. Lemon and told
9    him that we were both available that evening.  We left the lights on the porch at our house that evening
10   and the following evening until approximately 11:00 p.m.  No one came by either evening.
11   My husband Mr. Kube was not at fault in any way for what happened to my nose.
12   Mr. Kube and I need to have communication because we are married and because we were in
13   counseling together and I would like for that to continue.  We need to discuss finances and insurance
14   and we need to deal with the flooding of our home.  I am also scheduled for ACL surgery on January
15   22, but have asked for an earlier date in the event of a cancellation.  I will need assistance certainly after
16   getting the surgery as I will not be able to drive and will be on crutches.
17   I am also in counseling individually for personal issues but I was not a victim of domestic
18   violence in this case.
19   I was never informed by anyone that the police were going to obtain my medical records or I
20   would have objected. There is no need for the protection order as indicated above, because there was no
21   assault against me by Mr. Kube.  I am not threatened by Mr. Kube nor is Mr. Kube a danger to me or to
22   the community.
23   DATED this  6  day of December, 2019.

ERIN COOLEY

MOTION OF AGGRIEVED PARTY FOR THE
RETURN AND SUPPRESSION OF MEDICAL
RECORDS AND TESTIMONY
Page 4

LAW OFFICE OF TONY DiTOMMASO, PS
23 South Wenatchee Avenue, Suite 201
Wenatchee, WA 98801
telephone (509) 665-8776  fax (509) 665-0397

# EXHIBIT D

1

2

3

4    SUPERIOR COURT OF WASHINGTON IN AND
5    FOR THE COUNTY OF DOUGLAS

6

7    STATE OF WASHINGTON,
                                                    CASE NO.: 19-1-00149-09
8                        Plaintiff,

9         vs.                                       DECLARATION OF PAUL KUBE

10   PAUL KUBE,

11                       Defendant.

12   I, the undersigned, declare as follows:

13

14        The "Affidavit for Search Warrant" signed by Deputy Marc Lemons on August 6, 2019, contains

15   numerous patently false and misleading statements ("Lemons Affidavit"). Deputy Lemons falsely states:

16   "I have previous history with Erin regarding domestic violence between her and her husband Paul S.

17   Kube." (Lemons Affidavit, page 2).  No such history exists and this statement is utterly and completely

18   false.

19        Deputy Lemons falsely and/or misleadingly states: "he [Paul Kube] did not return my calls until

20   days later.  I have still not had contact with Paul reference this case." (See Deputy Lemons Affidavit,

21   page 2.)  The truth is absolutely the opposite.  At the time Deputy Lemons signed the Affidavit on

22   August 6th, 2019, I had called Deputy Lemons three times and left at least two voicemail messages for

23   Deputy Lemons that he did not return, ever.  Attached as Exhibit "A" is a true and correct copy of a

24   screenshot (Screenshot 20191217) of my cell phone showing on July 11, 2019, two calls to Rivercom

25   ((509)663-9911) for Deputy Lemons at 5:16 p.m. on July 11, 2019, and one call on July 12, 2019, at

26   5:22 p.m.

27        When Deputy Lemons signed and filed the Affidavit on August 6, 2019, more than twenty five

28   (25) days had passed since I left the voicemail message for Deputy Lemons on July 11th.  Deputy

29   Lemons chose not to return my repeated calls and voicemails. Instead, Deputy Lemons made the false

30

DECLARATION OF PAUL KUBE-1

                                                    *KOTTKAMP, YEDINAK &*
                                                    *ESWORTHY, PLLC*
                                                    *Attorneys at Law*
                                                    *435 Grande*
                                                    *P.O. BOX 1667*
                                                    *WENATCHEE, WA 98807-1667*
                                                    *(509) 662-8647*

1  and/or misleading statement under oath that I "did not return my calls." The truth is Deputy Lemons

2  did not return my calls and I was the last one to call back. Twenty-five (25) days went by between the

3  time of the first voicemail I left and Deputy Lemons' false and/or misleading statement under oath.

4       Deputy Lemons' own report includes this statement on July 9, 2019: "As I leaving [sic] CWH

5  [Central Washington Hospital], I contacted Sgt. Baker to apprise him of the incident. Sgt. Baker

6  believed there was not enough probable cause to arrest Paul without further statements from Paul.

7  (Emphasis added). However, despite knowing the importance of my statement, as emphasized by Sgt.

8  Baker above, Deputy Lemons chose not to speak with me. He knew that the accusation of "history of

9  domestic violence" was false. His statement about my failure to cooperate by calling him back was also

10  false at the time Deputy Lemons signed the Affidavit some twenty five (25) days after I left voicemail

11  messages for him to call me back. Had Deputy Lemons actually called me back rather than make false

12  and/or misleading statements under oath in his Affidavit, Deputy Lemons would have learned the

13  following:

14       I arrived home from work on July 8, 2019, at 5:47:17 PM. The reason why I know that exact

15  information is due to the fact that I was just days away from successfully completing a five year term in

16  which I had an alcohol interlock device on my vehicle and I obtained copies of those records to provide

17  to Deputy Lemons assuming he was going to call me back. Attached as Exhibit "B" are true and correct

18  copy of the interlock records "Scanned from a Xerox Multifunction Printer.pdf (160 KB)" for time

19  period of July 8-10, 2019. ("Vehicle Records").

20       When I arrived home at 5:47:17 PM on July 8, 2019, my wife Erin Cooley was indeed very

21  intoxicated as referenced in her Declaration on page 2, lls 17-19. (See Declaration of Erin Cooley

22  December 6, 2019 ("Cooley Declaration")). As is verified by Vehicle Records, I was not drinking on

23  July 8, 2019 through July 10, 2019, despite any misleading and unsupported claims by Deputy Lemons

24  to the contrary.

25       Had Deputy Lemons actually called me back rather than make the false and/or misleading

26  statements under oath in the Deputy Lemons Affidavit, Deputy Lemons would have also learned that

27  while I was asleep with the CPAP machine operating, Erin removed the CPAP off my face waking me

28  up involuntarily on the evening of July 8, 2019. Attached as Exhibit "C" are true and correct copies of

29  the CPAP (continuous positive airway pressure) machine records which confirms that I was asleep for

30

DECLARATION OF PAUL KUBE-2

KOTTKAMP, YEDINAK &
ESWORTHY, PLLC
Attorneys at Law
435 Orondo
P.O. BOX 1667
WENATCHEE, WA 98807 1667
(509) 667-6667

1   "22 mins. 1 secs" on evening of July 8, consistent with what Erin describes what happened in the Cooley
2   Declaration, page, 2, lls 22-27.
3        Had Deputy Lemons actually called me back rather than make the false and/or misleading
4   statements under oath in the Affidavit, Deputy Lemons would have also learned that consistent with the
5   Cooley Declaration, I was not at fault in any way for any injuries Erin sustained.
6        In addition to the false statements made by Deputy Lemons in his Affidavit, Deputy Prosecuting
7   attorney N. Smith "Smitty" Hagopian repeated the patently false narrative of Deputy Lemons' Affidavit
8   that there is a history of domestic violence between myself and Erin Cooley at the hearing on December
9   16, 2019. Absolutely no truth exists of that false narrative started by in Deputy Lemons' Affidavit and
10  falsely repeated by the unsworn statements of Mr. Hagopian.
11       Also, at the hearing of December 16, 2019, Mr. Hagopian completely ignored the holding of
12  valid precedent cited by Mr. DiTommaso's brief *State v. Davidson*. Instead of addressing the law as
13  articulated in *Davidson*, Mr. Hagopian's brief references legislative findings which generically reference
14  "recent decisions" of the federal and state Supreme Courts. *Davidson* is not a Supreme Court case so
15  obviously that is not what the legislature was referencing in those findings, but that does not stop the
16  State from ignoring the holding in *Davidson* and confuse this Court with that spin. Nothing in the
17  legislative findings addresses the *Davidson* holding. District Courts can issue warrants anywhere in the
18  state as long as the District Court would have jurisdiction over the alleged matter.
19       Jurisdiction is a bright line rule. Either a court has power to act or it does not. It is completely
20  irrelevant if past practice mistakenly thought the District Courts had such power. The *Davidson* case
21  clearly holds that the District Court only has that jurisdiction (power) if the District Court has the power
22  to hear the case. Here, the District Court clearly did not have the power to hear felonies and under the
23  holding in *Davidson*, the District Court lacked the power jurisdiction to issue the warrant. The State
24  cannot simply spin that law out of existence. The State must address the actual holding of the *Davidson*
25  case, which it has not done. (*State v. Davidson*, 26 Wn.App. 623, 625 (1980)).
26       Also, at the hearing of December 16, 2019, Mr. Hagopian attempts to claim the State complied
27  with the statute to obtain the medical records. The State did not. The portion of the statute the State is
28  <u>now</u> relying on limits the information they can obtain without the patient's permission to specific
29  itemized narrow information as follows:
30

DECLARATION OF PAUL KUBE-3

*KOTTKAMP, YEDINAK &*
*ESWORTHY, PLLC*
*Attorneys at Law*
*435 Orondo*
*P.O. BOX 1667*
*WENATCHEE, WA 98807-1667*
*(509) 667-8667*

1      "the following information, if known:

2      (i) The name of the patient;

3      (ii) The patient's residence,

4      (iii) The patient's sex;

5      (iv) The patient's age;

6      (v) The patient's condition;

7      (vi) The patient's diagnosis, or extent and location of injuries as determined by a health care

8      provider;

9      (vii) Whether the patient was conscious when admitted;

10     (viii) The name of the health care provider making the determination in (b)(v), (vi), and (vii) of

11     this subsection;

12     (ix) Whether the patient has been transferred to another facility; and

13     (x) The patient's discharge time and date."

14

15  RCW 70.02.200(2)(b).

16

17      The health care provider "shall disclose" that specific and limited information pursuant to RCW

18  70.02.200(2). It makes no sense that the legislature would have made the specific list of information

19  applicable if it was intended to be broader than that specific narrowly tailored information. But, the

20  officer and/or warrant did not request that specific information nor was the information produced limited

21  to that specific information, instead the Lemons Affidavit was extremely broad requesting: "including

22  but not limited to, emergency department record(s), laboratory test(s) & report(s), diagnostic test(s) &

23  report(s), pathology test(s) & report(s), radiology report(s), radiology image(s), photograph(s), operative

24  report(s), EKG report(s), consultation(s), itemized billing records, discharge summary(s) and medical

25  staff notes." (Lemons Affidavit at 1).

26      The State clearly failed to follow the applicable statutes, regardless of the State's attempt at spin

27  on that issue as well. Rather, the State's request was not narrowly tailored to limit the information to the

28  enumerated specific information above, rather it was a much, much more broad request for the entire

29  medical record which included protected health care information beyond the scope of the specific

30  itemized information above. The statute clearly provides for an opportunity for law enforcement to

DECLARATION OF PAUL KUBE-4

KOTTKAMP, YEDINAK &
ESWORTHY, PLLC
Attorneys at Law
135 Orondo
P.O. BOX 1667
WENATCHEE, WA 98807-1667
(509) 667-8667

1   obtain "medical records" through that broader request pursuant to RCW 70.02.200(2)(c) which states:

2   "(c) Pursuant to compulsory process in accordance with RCW 70.02.060." That is the very statute for

3   which the State failed to comply, which requires notice to the patient. The State went on a fishing

4   expedition beyond the itemized scope because the search was not narrowly tailored to the statutory

5   specific information authorized for disclosure.

6

7            I declare under penalty of perjury under the laws of the State of Washington that the

8   foregoing is true and correct.

9

10   SIGNED at [Wenatchee], Washington on this 18th day of December, 2019.

11

12

13                                          PAUL KUBE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

DECLARATION OF PAUL KUBE-5

KOTTKAMP, YEDINAK &
ESWORTHY, PLLC
Attorneys at Law
435 Orondo
P.O. BOX 1667
WENATCHEE, WA 98807-1667
(509) 667-8667



9:25

Phone

(509) 663-9911

July 11, 2019

(509) 663-9911 (2)

(509) 662-7444

Me

(509) 663-9911

Me

(800) 922-0204

Me

EXHIBIT
"A"

Kuba, Paul
7/9/65

Smart Start
Events Log File Full Report

| | |
|---|---|
| Account Number. | 001233140729042546 |
| Head Serial Number: | HLBN003842 |
| Logger Serial Number: | EIAH058937 |
| Software Revision: | 8.05 026 |
| Total Log Events: | 326 |
| Dates Covered This Report: | 7/8/19 - 7/10/19 |
| Initial Test Warn Level: | .020 |
| Initial Test Fail Level: | .025 |
| Initial Test Violation Level: | .025 |
| Retest Warn Level: | .020 |
| Retest Fail Level: | 025 |
| Retest Violation Level: | 025 |
| Retest Time Limit: | 6 |
| Retest Time After Initial Pass: | 4 |
| Minimum Retest Time After Subsequent Pass | 10 |
| Maximum Retest Time After Subsequent Pass: | 45 |
| Retest Time After Warn: | 10 |
| Free Restart Time (Seconds): | 120 |
| Grace Time After Violation (Hours)· | 120 |
| Grace Time After Service (Hours): | 120 |
| Next Service Date: | 8/2/19 9:00 AM |
| Retest Enabled: | true |
| Breath Results Displayed: | false |
| Engine Vacuum run Detect Mode Enabled: | false |
| Horn Relay Function Enabled: | true |
| Camera Present | true |
| Initial Test Violation Limit: | 6 |
| Retest Violation Limit: | 1 |
| Circumvention Limit: | 1 |
| Lockout Limit | 6 |
| Master Violation Limit | 6 |
| Initial Test Violation Count: | 0 |
| Retest Violation Count: | 0 |
| Circumvention Count: | 0 |
| Lockout Count: | 0 |
| # Power Fail Warnings: | 0 |
| # High Battery Warnings: | 0 |
| # Hum Alerts: | 0 |
| # Pressure Alerts: | 0 |

View related photos

Monday, July 8, 2019

| | | |
|---|---|---|
| | 1:13:18 PM | Ignition On |
| | 1:13:35 PM | PC Disconnected |
| | 1:13:37 PM | Power On |
| | 1:13:40 PM | Ignition On |
| | 1:13:53 PM | PC Connected |
| | 1:14:00 PM | PC Disconnected |
| | 1:14:02 PM | Power On |
| | 1:14:05 PM | Ignition On |
| | 1:14:10 PM | Ignition Off |
| | 1:49:49 PM | Ignition On |
| | 1:50:07 PM | Ready for Test |
| View Photo | 1:50:17 PM | Picture Requested |
| | 1:50:25 PM | Analyzing Test Sample |
| | 1:50:25 PM | Initial Test-Pass |

0 000

EXHIBIT
"B"

Kube, Paul
7/9/65

Smart Start
Events Log File Full Report

| | | | |
|---|---|---|---|
| | 1:50:28 PM | Start Time Started | |
| | 1:50:42 PM | Engine Start | 13.09v |
| View Photo | 1:50:42 PM | Picture Requested | |
| View Photo | 1:54:32 PM | Picture Requested | |
| | 1:54:33 PM | Preparing for Test | |
| | 1:54:36 PM | Ready for Test | |
| | 1:54:37 PM | Rolling Test Window Initialized | |
| View Photo | 1:54:40 PM | Picture Requested | |
| | 1:54:48 PM | Analyzing Test Sample | |
| | 1:54:48 PM | Rolling Test-Pass | 0.000 |
| | 2:02:18 PM | Ignition Off | |
| | 2:02:18 PM | Engine Stop | 13.532v |
| | 2:02:19 PM | Free Restart Started | |
| | 2:04:18 PM | Free Restart Expired | |
| | 5:37:00 PM | Ignition On | |
| | 5:37:19 PM | Ready for Test | |
| View Photo | 5:37:23 PM | Picture Requested | |
| | 5:37:30 PM | Analyzing Test Sample | |
| | 5:37:31 PM | Initial Test-Pass | 0.000 |
| | 5:37:34 PM | Start Time Started | |
| | 5:37:47 PM | Engine Start | 13.362v |
| View Photo | 5:37:47 PM | Picture Requested | |
| View Photo | 5:41:34 PM | Picture Requested | |
| | 5:41:35 PM | Rolling Test Window Initialized | |
| | 5:41:35 PM | Preparing for Test | |
| | 5:41:38 PM | Ready for Test | |
| View Photo | 5:41:44 PM | Picture Requested | |
| | 5:41:51 PM | Analyzing Test Sample | |
| | 5:41:51 PM | Rolling Test-Pass | 0.000 |
| | 5:45:17 PM | Ignition Off | |
| | 5:45:17 PM | Engine Stop | 12.893v |
| | 5:45:17 PM | Free Restart Started | |
| | 5:47:16 PM | Free Restart Expired | |
| Tuesday, July 9, 2019 | | | |
| | 8:01:38 AM | Ignition On | |
| | 8:01:57 AM | Ready for Test | |
| View Photo | 8:01:59 AM | Picture Requested | |
| | 8:02:07 AM | Analyzing Test Sample | |
| | 8:02:07 AM | Initial Test-Pass | 0.000 |
| | 8:02:11 AM | Start Time Started | |
| | 8:02:26 AM | Engine Start | 13.343v |
| View Photo | 8:02:26 AM | Picture Requested | |
| View Photo | 8:06:07 AM | Picture Requested | |
| | 8:06:08 AM | Rolling Test Window Initialized | |
| | 8:06:08 AM | Preparing for Test | |
| | 8:06:11 AM | Ready for Test | |
| View Photo | 8:06:14 AM | Picture Requested | |
| | 8:06:22 AM | Analyzing Test Sample | |
| | 8:06:22 AM | Rolling Test-Pass | 0.000 |
| | 8:08:40 AM | Ignition Off | |
| | 8:08:40 AM | Engine Stop | 12.905v |
| | 8:08:41 AM | Free Restart Started | |
| | 8:10:40 AM | Free Restart Expired | |
| | 10:37:14 AM | Ignition On | |
| | 10:37:35 AM | Ready for Test | |
| View Photo | 10:38:42 AM | Picture Requested | |

Kube, Paul
7/9/65

Smart Start
Events Log File Full Report

|  | | | |
|---|---|---|---|
|  | 10:38:50 AM | Analyzing Test Sample | |
|  | 10:38:50 AM | Initial Test-Pass | 0.000 |
|  | 10:38:53 AM | Start Time Started | |
|  | 10:39:22 AM | Engine Start | 13.259v |
| View Photo | 10:39:22 AM | Picture Requested | |
| View Photo | 10:42:42 AM | Picture Requested | |
|  | 10:42:43 AM | Rolling Test Window Initialized | |
|  | 10:42:43 AM | Preparing for Test | |
|  | 10:42:46 AM | Ready for Test | |
| View Photo | 10:42:50 AM | Picture Requested | |
|  | 10:42:58 AM | Analyzing Test Sample | |
|  | 10:42:58 AM | Rolling Test-Pass | 0.000 |
|  | 10:52:01 AM | Ignition Off | |
|  | 10:52:01 AM | Engine Stop | 12.913v |
|  | 10:52:02 AM | Free Restart Started | |
|  | 10:54:01 AM | Free Restart Expired | |
|  | 11:17:07 AM | Ignition On | |
|  | 11:17:24 AM | Ready for Test | |
| View Photo | 11:17:27 AM | Picture Requested | |
|  | 11:17:35 AM | Analyzing Test Sample | |
|  | 11:17:35 AM | Initial Test-Pass | 0.000 |
|  | 11:17:39 AM | Start Time Started | |
|  | 11:17:51 AM | Engine Start | 13.421v |
| View Photo | 11:17:52 AM | Picture Requested | |
| View Photo | 11:21:14 AM | Picture Requested | |
|  | 11:21:15 AM | Rolling Test Window Initialized | |
|  | 11:21:15 AM | Preparing for Test | |
|  | 11:21:18 AM | Ready for Test | |
| View Photo | 11:21:23 AM | Picture Requested | |
|  | 11:21:31 AM | Analyzing Test Sample | |
|  | 11:21:31 AM | Rolling Test-Pass | 0.000 |
|  | 11:24:36 AM | Ignition Off | |
|  | 11:24:36 AM | Engine Stop | 12.912v |
|  | 11:24:37 AM | Free Restart Started | |
|  | 11:26:36 AM | Free Restart Expired | |
|  | 11:31:36 AM | Ignition On | |
|  | 11:31:42 AM | Ready for Test | |
| View Photo | 11:31:59 AM | Picture Requested | |
|  | 11:32:07 AM | Analyzing Test Sample | |
|  | 11:32:07 AM | Initial Test-Pass | 0.000 |
|  | 11:32:10 AM | Start Time Started | |
|  | 11:32:24 AM | Engine Start | 13.406v |
| View Photo | 11:32:25 AM | Picture Requested | |
| View Photo | 11:35:56 AM | Picture Requested | |
|  | 11:35:57 AM | Rolling Test Window Initialized | |
|  | 11:35:57 AM | Preparing for Test | |
|  | 11:36:00 AM | Ready for Test | |
| View Photo | 11:36:04 AM | Picture Requested | |
|  | 11:36:12 AM | Analyzing Test Sample | |
|  | 11:36:12 AM | Rolling Test-Pass | 0.000 |
|  | 11:42:06 AM | Ignition Off | |
|  | 11:42:06 AM | Engine Stop | 12.859v |
|  | 11:42:07 AM | Free Restart Started | |
|  | 11:44:06 AM | Free Restart Expired | |
|  | 12:20:29 PM | Ignition On | |
|  | 12:20:47 PM | Ready for Test | |

Kube, Paul
7/9/65

Smart Start
Events Log File Full Report

| | | | |
|---|---|---|---|
| View Photo | 12:21:10 PM | Picture Requested | |
| | 12:21:18 PM | Analyzing Test Sample | |
| | 12:21:18 PM | Initial Test-Pass | 0.000 |
| | 12:21:21 PM | Start Time Started | |
| | 12:21:35 PM | Engine Start | 13.335v |
| View Photo | 12:21:36 PM | Picture Requested | |
| View Photo | 12:25:01 PM | Picture Requested | |
| | 12:25:02 PM | Rolling Test Window Initialized | |
| | 12:25:02 PM | Preparing for Test | |
| | 12:25:05 PM | Ready for Test | |
| View Photo | 12:25:11 PM | Picture Requested | |
| | 12:25:19 PM | Analyzing Test Sample | |
| | 12:25:19 PM | Rolling Test-Pass | 0.000 |
| View Photo | 12:43:17 PM | Picture Requested | |
| | 12:43:18 PM | Rolling Test Window Initialized | |
| | 12:43:18 PM | Preparing for Test | |
| | 12:43:21 PM | Ready for Test | |
| View Photo | 12:43:26 PM | Picture Requested | |
| | 12:43:34 PM | Analyzing Test Sample | |
| | 12:43:34 PM | Rolling Test-Pass | 0.000 |
| View Photo | 1:03:13 PM | Picture Requested | |
| | 1:03:14 PM | Rolling Test Window Initialized | |
| | 1:03:14 PM | Preparing for Test | |
| | 1:03:17 PM | Ready for Test | |
| View Photo | 1:03:22 PM | Picture Requested | |
| | 1:03:29 PM | Analyzing Test Sample | |
| | 1:03:29 PM | Rolling Test-Pass | 0.000 |
| | 1:04:09 PM | Ignition Off | |
| | 1:04:09 PM | Engine Stop | 13.372v |
| | 1:04:10 PM | Free Restart Started | |
| | 1:06:09 PM | Free Restart Expired | |
| | 2:31:10 PM | Ignition On | |
| | 2:31:27 PM | Ready for Test | |
| View Photo | 2:32:08 PM | Picture Requested | |
| | 2:32:16 PM | Analyzing Test Sample | |
| | 2:32:16 PM | Initial Test-Pass | 0.000 |
| | 2:32:20 PM | Start Time Started | |
| | 2:32:34 PM | Engine Start | 13.403v |
| View Photo | 2:32:35 PM | Picture Requested | |
| View Photo | 2:36:18 PM | Picture Requested | |
| | 2:36:19 PM | Rolling Test Window Initialized | |
| | 2:36:19 PM | Preparing for Test | |
| | 2:36:22 PM | Ready for Test | |
| View Photo | 2:36:28 PM | Picture Requested | |
| | 2:36:35 PM | Analyzing Test Sample | |
| | 2:36:35 PM | Rolling Test-Pass | 0.000 |
| | 2:45:07 PM | Ignition Off | |
| | 2:45:07 PM | Engine Stop | 12.866v |
| | 2:45:08 PM | Free Restart Started | |
| | 2:47:07 PM | Free Restart Expired | |
| | 2:47:56 PM | Ignition On | |
| | 2:48:02 PM | Ready for Test | |
| View Photo | 2:48:10 PM | Picture Requested | |
| | 2:48:18 PM | Analyzing Test Sample | |
| | 2:48:18 PM | Initial Test-Pass | 0.000 |
| | 2:48:21 PM | Start Time Started | |

Kube, Paul
7/9/65

Smart Start
Events Log File Full Report

| | Time | Event | Value |
|---|---|---|---|
| | 2:48:38 PM | Engine Start | 13.374v |
| View Photo | 2:48:39 PM | Picture Requested | |
| View Photo | 2:52:29 PM | Picture Requested | |
| | 2:52:30 PM | Rolling Test Window Initialized | |
| | 2:52:30 PM | Preparing for Test | |
| | 2:52:33 PM | Ready for Test | |
| View Photo | 2:52:38 PM | Picture Requested | |
| | 2:52:45 PM | Analyzing Test Sample | |
| | 2:52:45 PM | Rolling Test-Pass | 0.000 |
| | 3:08:29 PM | Ignition Off | |
| | 3:08:29 PM | Engine Stop | 13.203v |
| | 3:08:30 PM | Free Restart Started | |
| | 3:10:29 PM | Free Restart Expired | |
| | 3:12:18 PM | Ignition On | |
| | 3:12:24 PM | Ready for Test | |
| View Photo | 3:12:32 PM | Picture Requested | |
| | 3:12:40 PM | Analyzing Test Sample | |
| | 3:12:40 PM | Initial Test-Pass | 0.000 |
| | 3:12:43 PM | Start Time Started | |
| | 3:12:56 PM | Ignition Off | |
| | 3:14:42 PM | Start Time Expired | |
| | 3:24:08 PM | Ignition On | |
| | 3:24:28 PM | Ready for Test | |
| View Photo | 3:24:31 PM | Picture Requested | |
| | 3:24:39 PM | Analyzing Test Sample | |
| | 3:24:39 PM | Initial Test-Pass | 0.000 |
| | 3:24:42 PM | Start Time Started | |
| | 3:24:58 PM | Engine Start | 13.335v |
| View Photo | 3:24:59 PM | Picture Requested | |
| View Photo | 3:28:29 PM | Picture Requested | |
| | 3:28:30 PM | Rolling Test Window Initialized | |
| | 3:28:30 PM | Preparing for Test | |
| | 3:28:33 PM | Ready for Test | |
| View Photo | 3:28:36 PM | Picture Requested | |
| | 3:28:44 PM | Analyzing Test Sample | |
| | 3:28:44 PM | Rolling Test-Pass | 0.000 |
| | 3:32:18 PM | Ignition Off | |
| | 3:32:18 PM | Engine Stop | 12.803v |
| | 3:32:18 PM | Free Restart Started | |
| | 3:34:17 PM | Free Restart Expired | |
| | 5:33:15 PM | Ignition On | |
| | 5:33:32 PM | Ready for Test | |
| View Photo | 5:33:49 PM | Picture Requested | |
| | 5:33:57 PM | Analyzing Test Sample | |
| | 5:33:57 PM | Initial Test-Pass | 0.000 |
| | 5:34:01 PM | Start Time Started | |
| | 5:34:41 PM | Engine Start | 13.478v |
| View Photo | 5:34:41 PM | Picture Requested | |
| View Photo | 5:38:37 PM | Picture Requested | |
| | 5:38:39 PM | Rolling Test Window Initialized | |
| | 5:38:39 PM | Preparing for Test | |
| | 5:38:41 PM | Ready for Test | |
| View Photo | 5:38:51 PM | Picture Requested | |
| | 5:38:59 PM | Analyzing Test Sample | |
| | 5:38:59 PM | Rolling Test-Pass | 0.000 |
| | 5:50:56 PM | Ignition Off | |

Kube, Paul
7/9/65

Smart Start<br>Events Log File Full Report

| | | | |
|---|---|---|---|
| | 5:50:56 PM | Engine Stop | 12.953v |
| | 5:50:57 PM | Free Restart Started | |
| | 5:52:56 PM | Free Restart Expired | |
| | 6:02:46 PM | Ignition On | |
| | 6:03:04 PM | Ready for Test | |
| View Photo | 6:03:15 PM | Picture Requested | |
| | 6:03:23 PM | Analyzing Test Sample | |
| | 6:03:23 PM | Initial Test-Pass | 0.000 |
| | 6:03:26 PM | Start Time Started | |
| | 6:03:45 PM | Engine Start | 13.448v |
| View Photo | 6:03:46 PM | Picture Requested | |
| View Photo | 6:07:41 PM | Picture Requested | |
| | 6:07:42 PM | Rolling Test Window Initialized | |
| | 6 07:43 PM | Preparing for Test | |
| | 6.07:45 PM | Ready for Test | |
| View Photo | 6.07:51 PM | Picture Requested | |
| | 6:07:58 PM | Analyzing Test Sample | |
| | 6:07:59 PM | Rolling Test-Pass | 0.000 |
| | 6:12:40 PM | Ignition Off | |
| | 6:12:40 PM | Engine Stop | 12.92v |
| | 6:12:41 PM | Free Restart Started | |
| | 6:14:40 PM | Free Restart Expired | |
| | 6:18:19 PM | Ignition On | |
| | 6:18:26 PM | Ready for Test | |
| View Photo | 6:18:42 PM | Picture Requested | |
| | 6:18:49 PM | Analyzing Test Sample | |
| | 6:18:49 PM | Initial Test-Pass | 0.000 |
| | 6:18:53 PM | Start Time Started | |
| | 6:19:15 PM | Engine Start | 13.436v |
| View Photo | 6:19.15 PM | Picture Requested | |
| View Photo | 6:22:40 PM | Picture Requested | |
| | 6:22:41 PM | Rolling Test Window Initialized | |
| | 6:22:41 PM | Preparing for Test | |
| | 6:22:42 PM | System is warming up | |
| | 6:22:44 PM | Ready for Test | |
| View Photo | 6:22:50 PM | Picture Requested | |
| | 6:22:58 PM | Analyzing Test Sample | |
| | 6:22:58 PM | Rolling Test-Pass | 0.000 |
| | 6:24:02 PM | Ignition Off | |
| | 6:24:02 PM | Engine Stop | 12.861v |
| | 6:24:03 PM | Free Restart Started | |
| | 6:26:02 PM | Free Restart Expired | |
| Wednesday, July 10, 2019 | | | |
| | 8:33:51 AM | Ignition On | |
| | 8 34:10 AM | Ready for Test | |
| View Photo | 8:34:14 AM | Picture Requested | |
| | 8:34:22 AM | Analyzing Test Sample | |
| | 8:34:22 AM | Initial Test-Pass | 0.000 |
| | 8:34:26 AM | Start Time Started | |
| | 8:34:38 AM | Engine Start | 13.407v |
| View Photo | 8:34:40 AM | Picture Requested | |
| View Photo | 8:38:17 AM | Picture Requested | |
| | 8:38:19 AM | Rolling Test Window Initialized | |
| | 8:38:19 AM | Preparing for Test | |
| | 8:38:21 AM | Ready for Test | |
| View Photo | 8:38:27 AM | Picture Requested | |

Kuba, Paul
7/9/65

Smart Start
Events Log File Full Report

| | | |
|---|---|---|
| 8:38:35 AM | Analyzing Test Sample | |
| 8:38:35 AM | Rolling Test-Pass | 0 000 |
| 8:43:00 AM | Ignition Off | |
| 8:43:00 AM | Engine Stop | 12.955v |
| 8:43:01 AM | Free Restart Started | |
| 8:45:00 AM | Free Restart Expired | |
| 11:16:11 AM | Ignition On | |
| 11:16:26 AM | System is warming up | |
| 11:16:27 AM | Ready for Test | |
| 11:16:27 AM | Ready for Test | |
| View Photo 11:16:30 AM | Picture Requested | |
| 11:16:38 AM | Analyzing Test Sample | |
| 11:16:38 AM | Initial Test-Pass | 0.000 |
| 11:16:42 AM | Start Time Started | |
| 11:16:56 AM | Engine Start | 13 362v |
| View Photo 11:16:56 AM | Picture Requested | |
| View Photo 11:20:32 AM | Picture Requested | |
| 11:20:33 AM | Rolling Test Window Initialized | |
| 11:20:33 AM | Preparing for Test | |
| 11:20:36 AM | Ready for Test | |
| View Photo 11:20:41 AM | Picture Requested | |
| 11:20:48 AM | Analyzing Test Sample | |
| 11:20:48 AM | Rolling Test-Pass | 0.000 |
| 11:26:13 AM | Ignition Off | |
| 11:26:13 AM | Engine Stop | 12 888v |
| 11:26:14 AM | Free Restart Started | |
| 11:27:09 AM | Ignition On | |
| 11:27:24 AM | Engine Start | 13 434v |
| View Photo 11:27:24 AM | Picture Requested | |
| 11:27:33 AM | Ignition Off | |
| 11:27:33 AM | Engine Stop | 13 249v |
| 11:27:34 AM | Free Restart Started | |
| 11:28:45 AM | PC Connected | |
| 11:28:45 AM | Calibration Check | 0 028 |

Wenatchee
1842 N. Wenatchee Ave
Wenatchee, WA 98801

**KUBE, PAUL**

Device: DreamStation Auto CPAP (500X110) (J232973505B23 V1.1.7.3260)

**Details Report**

**Patient:**
  KUBE, PAUL
  924 NW CASCADE
  EAST WENATCHEE, WA 98801

Patient ID: CAZX7

Home Phone: 509-670-9533
Date of Birth: 7/9/1965
Age: 54
Mask: NUANCE PRO GEL PILLOWS SYS.

**Sleep Doctor:**
  FEZER, MIRANDA PA-C
  820 N CHELAN ST
  WENATCHEE, WA 98801

Group/Practice: WENATCHEE VALLEY CLINIC
Phone: 5096638711
Fax:
E-Mail Address:

**PCP:**
  GILLESPIE, KELLEY MD

Phone:

**Clinician:**
  Gonzales, Randy CRT



**Compliance Information**          7/8/2019 - 7/8/2019





EXHIBIT
"C"

Patient ID: CAZX7                                                                                    **KUBE, PAUL**

Patterns of Use

**July, 2019**

7/8/2019                           |                              0:22/0:22

                    14  16  18  20  22  0  2  4  6  8  10

RESPIRONICS   Printed By:   7/11/2019   EncoreAnywhere – version: 2.41.1.4                              Page 2 of 8

This report is only one of several elements to consider when evaluating therapy effectiveness and is not a substitute for diagnostic data.

Patient ID: CAZX7

**KUBE, PAUL**



**Pressure (cmH2O)**

Min CPAP Setting    Max CPAP Setting ———— 90% CPAP

Average 90% Pressure
7.0

Average CPAP
6.7

**Percent of Night in Periodic Breathing (PB)**

Average % of Night in
Periodic Breathing
0.0%

**Clear Airway And Obstructed Airway Apnea Indices**

———— Clear Airway Apnea Index (CA)    ———— Obstructed Airway Apnea Index (OA)

Average CA Index
0.0

Average OA Index
0.0

**Hypopnea And RERA Indices**

———— Hypopnea Index (H) ———— RERA Index (RE)

Average Hypopnea Index
0.0

Average RERA Index
0.0

Average AHI
0.0

**Flow Limitation And Vibratory Snore Indices**

Flow Limitation Index (FL) ———— Vibratory Snore Index (VS)

Average FL Index
0.0

Average VS Index
0.0

Printed by:    7/11/2019    EncoreAnywhere - version: 2.41.1.4    Page 3 of 6

RESPIRONICS    This report is only one of several elements to consider when evaluating therapy effectiveness and is not a substitute for diagnostic data.

Patient ID: CAZX7

**KUBE, PAUL**



RESPIRONICS   Printed By:   7/11/2019   EncoreAnywhere - version: 2.41.1.4

This report is only one of several elements to consider when evaluating therapy effectiveness and is not a substitute for diagnostic data.

Page 4 of 6

Patient ID: CAZX7                                                                KUBE, PAUL

**Daily Details**
7/8/2019 10:14 PM - 7/8/2019 10:36 PM



FL - Flow Limitation, VS - Vibratory Snore, PB - Periodic Breathing, CA - Clear Airway Apnea, RE - RERA, H - Hypopnea, OA - Obstructed Airway Apnea, AHI - Apnea/Hypopnea Index

Patient ID: CAZX7

KUBE, PAUL

## Compliance Summary

| | |
|---|---|
| Date Range | 7/8/2019 - 7/8/2019 (1 day) |
| Days with Device Usage | 1 day |
| Days without Device Usage | 0 days |
| Percent Days with Device Usage | 100.0% |
| Cumulative Usage | 22 mins. 1 secs. |
| Maximum Usage (1 Day) | 22 mins. 1 secs. |
| Average Usage (All Days) | 22 mins. 1 secs. |
| Average Usage (Days Used) | 22 mins. 1 secs. |
| Minimum Usage (1 Day) | 22 mins. 1 secs. |
| Percent of Days with Usage >= 4 Hours | 0.0% |
| Percent of Days with Usage < 4 Hours | 100.0% |
| Total Blower Time | 22 mins. 1 secs. |

## Auto-CPAP Summary

| | |
|---|---|
| Auto-CPAP Mean Pressure | 6.7 cmH2O |
| Auto-CPAP Peak Average Pressure | 6.7 cmH2O |
| Average Device Pressure <= 90% of Time | 7.0 cmH2O |
| Average Time in Large Leak Per Day | 0 secs. |
| Average AHI | 0.0 |

## Device Settings as of                    7/8/2019

Device Mode            AutoCPAP - C-Flex

## Device Settings

| Parameter | Value |
|---|---|
| Min Pressure | 6 cmH2O |
| Max Pressure | 11 cmH2O |
| C-Flex Setting | 3 |
| Auto Off | Off |
| Auto On | On |
| View Optional Screens | Off |
| Ramp Type | Linear |
| Ramp Time | 30 minutes |
| Ramp Start Pressure | 5.0 cmH2O |
| Mask Resistance | 2 |
| Mask Resistance Lock | Off |
| Tubing Type | 15 HT |
| Tubing Type Lock | Off |
| Opti-Start | On |
| EZ-Start | Disabled |
| Tube Temperature | 1 |
| Humidifier | 4 |
| Humidification Mode on Heated Tube Disconnect | Adaptive |

RESPIRONICS    Printed By:    7/11/2019    EncoreAnywhere   version: 2.41.1.4

This report is only one of several elements to consider when evaluating therapy effectiveness and is not a substitute for diagnostic data.

Page 6 of 6

# EXHIBIT E

SUPERIOR COURT OF WASHINGTON
DOUGLAS COUNTY

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-1-00149-08 |
| | ) | |
| vs. | ) | DECLARATION OF. |
| | ) | |
| PAUL S. KUBE, | ) | _J. DuPONT_ |
| Defendant. | ) | |
| | ) | |

Attached is my sworn statement.

Dates this ___O2ND___ day of ___FEBRUARY___, 2020, and signed at

___1829   HOURS   POINT REYES STATION, CA 94956___ .

I swear, under penalty, under the laws of the State of Washington, that the attached
statement is true and correct.

_____#S27_____
(Signature of Declarant)

___JULIAN DUPONT___
(Print Name)

DECLARATION COVER SHEET

W. GORDON EDGAR
DOUGLAS COUNTY PROSECUTING ATTORNEY
P.O. Box 360, Waterville, WA 98858-0360
509-745-8535 • FAX 509-745-8670

LAW ENFORCEMENT SENSITIVE (FOUO)



UNITED STATES
DEPARTMENT OF THE INTERIOR
**National Park Service**
Supplementary Incident Report



| | |
|---|---|
| Printed: | 02/02/2020 19 00 by 527 |
| Incident. | NP19151029 Law Enforcement @09/05/2019 22·30 |

Author    #527 DUPONT, J                    Report time·  02/02/2020 18·09
Entered by: #527 DUPONT, J.                 Entered time: 02/02/2020 18:09

**Remarks:**
JD05

**Report:**
IN RESPONSE TO MEMO DATED 01/17/2020:

When I spoke to Deputy Lemons on 9/8/2019 I had called him as a member of the Douglas County Sheriff's office whose name was attached to a report involving domestic violence incident between Mr.Kube and Ms. Cooley. My coworker, United States Park Ranger P.Holthouse, had initially gotten the record from a clerk at the Douglas County Sheriff's office. I was hoping to clarify the total number of incidents that had involved Mr.Kube and Ms.Cooley. I reached Deputy Lemons, who was not anticipating my call. When I asked Deputy Lemons he indicated that he could recall approximately 7 occasions where the Douglas County Sheriff's office had been summoned to the Kube/Cooley Residence. Lemons stated that he was not at his police records computer. I took this to mean that his statement was an estimation of the total number of times that any member of the Douglas County Sheriff's Office had been to the Kube/Cooley residence. Deputy Lemons then gave me contact for the records department and suggested I file a records request for all incidents.

— END OF REPORT—

LAW ENFORCEMENT SENSITIVE (FOUO)

Printed by:  527   Date  02/02/2020 19:00  Computer:  INPPORE141522  Page 1 of 1